PARSONS MANUFACTURING COMPANY v. HAMILTON ICE MANUFACTURING COMPANY.

Argued March 19, 1909—Decided June 7, 1909.

The defendant corporation took over the assets and business of an incorporated company of the same name with the prefix "The" added. Among the obligations of the old company was an unpaid promissory note given to plaintiff in final payment of the consideration for the sale of an automatic blower which defendant had taken upon the sale or transfer of assets and subsequently sold. The officers and managers of defendant company were the same men who managed and directed the business of the old concern and caused the name of defendant corporation to be signed to the note in controversy, before the defendant company was organized, and upon occasions arranged with plaintiff for an extension of time to pay the note in suit. *Held*—

(1) It was for the jury under the circumstances to conclude whether the note in question was taken over by the defendant as an obligation with the old company's assets.

(2) Either by novation or by ratification of its managers' acts, as well as by estoppel resulting from the taking over of the entire assets and business and the promises of its managers based thereon to pay the liability of the defendant can be predicated.

On application for a rule to show cause for a new trial.

Before Justices REED, TRENCHARD and MINTURN.

For the plaintiff, *Wilson, Carr & Stackhouse.*

For the defendant, *French & Richards.*

The opinion of the court was delivered by

MINTURN, J.   The Hamilton Ice Company, of Camden, New Jersey, and the plaintiff, entered into a contract for the conditional sale to the ice company of an automatic blower known as the "Parsons System." The device was intended to regulate the draft upon the equipment of the ice company, and its cost was $1,300, payable in installments. The contract was signed on behalf of the ice company by N. B. Armstrong, manager, and the note in suit for a balance of $1,030 was given on January 15th, 1906, and was signed "Hamilton Ice Manufacturing Company, N. Bruce Armstrong, Treas." The Hamilton Ice Manufacturing Company, the defendant, was duly incorporated under the laws of the state on February 7th, 1906, and the incorporated company leased and took over the plant of the former company from one Robert G. Mc-Dougall, by an instrument in writing dated the 1st day of March, 1906. The officers of the corporation were Armstrong, McDougall and one Rose, who controlled all of the stock.

The plaintiff seeks in this suit to hold the defendant corporation liable for the note thus given, upon the ground that the payment thereof was assumed by defendant as one of the liabilities of the old company when defendant took over the property and assets of the former company. With this basis of liability in view the plaintiff gave testimony going to show that the ice plant with the automatic device, just as it stood, was taken over by defendant; that the officers of the new corporation were the same men who had been directing and operating the old plant, and that in such respect no substantial change took place except in defendant's *status* as a

legal entity between the old and the new concerns until the summer of 1908, when the defendant sold the machinery of the plant and presumably possessed itself of the proceeds. Plaintiff contends that both McDougall and Armstrong as the managers of the old concern knew of this outstanding obligation, and when they organized defendant corporation and took the assets of the old company it was within their contemplation that the new company should assume the indebtedness of the other, and with this in mind they caused the note in suit to be made not by the old concern but omitting the prefix "The" caused the note to be signed by the defendant corporation before it was organized. Upon subsequent occasions, and while managing defendant company, they met the representative of plaintiff and pleaded for an extension of time to pay the note, promised to deliver the note of the new company in substitution for the note in suit, and actually paid $30 interest upon the old obligation, but never delivered the new note.

It appears in the case that the organization meeting was the only meeting ever held of defendant company, and that Armstrong and McDougall, controlling the stock, managed and dictated the affairs of defendant *ab libitum* and without the formalities of corporation routine. Except for the responsibility that the law imposed upon them in the interest of creditors, they were practically the *factotum* of the corporation and responsible only to themselves for the propriety and legality of their management.

But it is not necessary to uphold the liability of this defendant upon that ground alone, for upon the basis of a novation of this debt, as well as upon grounds of estoppel, this defendant's liability seems clear. "Novation consists of a bilateral agreement for the substitution of one obligation for another and may take place either by the substitution of a new for an old party, or by the substitution of a new agreement between the same parties, or by a change of parties and agreement at the same time." 29 *Cyc.* 1134, and cases cited; *Lattimore* v. *Harsen,* 14 *Johns.* 330; *Munroe* v. *Perkins,* 9 *Pick.* 298.

Whether or not the novation in fact existed was a question under the testimony and the circumstances for the jury to pass upon. *Bullock* v. *Tompkins,* 125 *Mich.* 17; 29 *Cyc.* 1140, and cases cited.

And since a formal documentary novation was not essential to plaintiff's right to recover, the formal allegation of the novation in the declaration was not necessary. *Minternich* v. *Tresud Fruit Packing Co.,* 123 *Cal.* 379; 29 *Cyc.* 1129.

It was also perfectly competent for the corporation through its agents to ratify the agreements of those agents, and this ratification, which is substantially another method of estoppel *in pais,* may be evidenced from the facts and circumstances and the acts of the parties, and the nature of the subject-matter involved. *Fifth Ward Bank* v. *First National Bank,* 19 *Vroom* 513; *State* v. *Morris and Essex Railroad Co.,* 3 *Zab.* 360; *Park* v. *Grant Locomotive Works,* 13 *Stew. Eq.* 114. While this doctrine of estoppel is equitable in its origin, it is equally available in an action at law in order to subserve the ends of justice. *Kirk* v. *Hamilton,* 102 *U. S.* 68.

There is ample authority also to support the proposition that the defendant having taken over the assets of the former company for the purpose of carrying on its business, without apparent change in the *personnel* of the concern, is liable for the payment of the debts of the former concern. It is held to take the benefits and advantages *cum onere.* 10 *Cyc.* 1111, and cases; *Davivier* v. *Gallilee,* 139 *Fed. Rep.* 118; *Hibernia Fire Insurance Co.* v. *St. Louis Railway Co.,* 10 *Id.* 596.

We conclude, therefore, that it was a question of fact for the jury to determine whether upon the testimony and the circumstances of the case the defendant assumed the payment of this indebtedness as its own obligation, and the jury having found for the plaintiff, it must be assumed that their verdict was predicated upon that fact.

The application for the rule to show cause will be denied.